### FIRST NATIONAL BANK OF MINNEAPOLIS
### v.
### The ORDER OF SAINT PAUL, FIRST HERMIT—THE PAULINE FATHERS.
### Civ. A. No. 72–2016.

United States District Court,
E. D. Pennsylvania.
Feb. 6, 1973.

John Markle, Jr., Philadelphia, Pa., for plaintiff.

Matthew J. Broderick, Harvey Bartle, III, Philadelphia, Pa., for defendant.

## OPINION

LUONGO, District Judge.

Plaintiff, First National Bank of Minneapolis (Bank), is Trustee under an Indenture Agreement dated November 22, 1967 for the holders of $1,500,000 of notes issued by The Order of Saint Paul, First Hermit—The Pauline Fathers (the Order). The notes, which bear interest at 6½% per annum, became due and payable on October 1, 1972. The Order defaulted in payment of the principal on the due date and the Bank instituted this suit on October 13, 1972.

Contending that there are no genuine issues of fact for trial, the Bank has moved for summary judgment under Rule 56, F.R.Civ.P. It seeks judgment in the principal amount of $1,500,000, plus interest at 6½% from October 1, 1972, together with costs of collection, including a $75,000 counsel fee. The Order resists the motion for summary judgment, contending that there are genuine issues of fact for trial in that the Bank has failed "to follow the substantial and significant procedures" [Defendant's Memorandum, p. 3] which are, in its view, required by the terms and provisions of the Indenture Agreement prior to instituting suit.

I am satisfied that there are no issues of fact for trial and that the Bank is entitled to summary judgment for the principal amount of the notes, $1,500,000, plus interest and costs of suit. Insofar as the motion for summary judgment seeks an award of counsel fee and other collection costs, it will be denied, with leave to plaintiff to establish, at an evidentiary hearing, the actual costs of collection and the reasonableness of the amount claimed as counsel fee.

The Order has made several contentions as to alleged issues of fact precluding entry of summary judgment. The first of the Order's contentions relates to the steps that are required to be taken prior to the institution of suit. The Indenture Agreement provides that upon the occurrence of a default,[1] the Bank, as "Corporate Trustee may, and upon the written request of the holders of not less than one quarter in principal amount of the notes secured thereby and then outstanding . . . shall, by notice in writing . . . declare the principal of all of the notes hereby secured then outstanding and payable immediately, and upon such declaration the same shall become due and payable immediately . . . ." Article IV, Section 1.[2] The Indenture Agreement provides further that:

"In case the [Order] shall fail forthwith to pay such amounts upon such demand, the Corporate Trustee, in its own name and as trustee of an express trust, *shall be entitled and empowered to institute* and upon the written request of the holders of twenty-five per cent (25%) in amount of the notes at such time outstanding, and upon being furnished with indemnity satisfactory to it against all costs, expenses and liabilities to be incurred, the Corporate Trustee *shall institute* such action or proceeding at law or in equity as may be advised by counsel, for the collection of the sums so due and unpaid, and may prosecute any such action or proceeding to judgment or final decree . . . ." Article IV, Section 2. (Emphasis supplied)

The Order contends that "Plaintiff's affidavit also fails to assert that suit was instituted 'upon written request

1. Defined, inter alia, as the "[f]ailure to pay the principal of any notes hereby secured when the same shall become due and payable . . . ." Article IV, Section 1(b).

2. In accordance with this provision of the Indenture Agreement, the Bank, by letter dated October 9, 1972, made demand on the Order for the immediate payment of the principal of the notes. Exhibit B to Plaintiff's Complaint.

of the holders of twenty-five per cent (25%) in the amount of the notes at such time outstanding.' " [Defendant's Memorandum, p. 3] The short answer to this contention is that the Agreement clearly *authorizes* the Bank to institute suit upon the occurrence of default, and *requires* it to do so in case of default upon written request of the holders of 25% of the amount of the outstanding notes. The Bank was clearly within its authority under the Agreement to institute this suit *without* the written request of note holders.

The Order also contends that the Bank failed to notify the note holders of the default as required by Article IV, Section 4, and Article VIII, Section 3, but this bald assertion cannot stand in the face of Bank's affidavit that such notice was, in fact, sent. [Affidavit of Charles M. Tilden, Assistant Vice President, Corporate Trust Division of the Bank, dated December 22, 1972]

The Order's other contentions relate to the necessity, sufficiency, and timing of a notice letter calling for a meeting of note holders. As to the necessity of such a letter, Article IV, Section 4, of the Indenture Agreement provides:

"Upon the occurrence of a default, notice to note holders shall be given in accordance with the provisions of subdivision (3) of Section 3 of Article VII. The notice, in addition to the notice of default, shall name a time (which shall not be less than ten (10) days nor more than twenty (20) days from the date upon which said notice shall be mailed) and a place (which shall be in the City of Minneapolis, Minnesota, with adequate accommodations) when and where said note holders *may* meet to consider such default and take action thereon. Such notice to note holders shall also be published not later than the third day prior to the day of meeting in a newspaper published in the City of Minneapolis, Minnesota. The meeting shall be held at the time and place indicat-

ed in the notice." (Emphasis supplied)

It is quite clear from the aforementioned affidavit of Charles M. Tilden, that notice of the meeting was sent and that a meeting was held. As for the sufficiency of the language contained in the notice letter, the Order contends that the notice was improper because it discouraged note holder attendance at the meeting and failed to inform the note holders that suit had been instituted. As a result, the Order argues, there was a small attendance of note holders, thereby depriving representatives of the Order of the opportunity to persuade the note holders to forgive the default and to persuade them to require the Bank to discontinue the suit. Defendant Order argues that "[i]mplicit in the Indenture's notice requirement is need for a good faith effort to hold a meeting with a quorum present." [Defendant's Supplemental Memorandum, p. 2.] The Order urges that the Bank did not make a good faith effort, pointing out such statements in the notice letter as: "since the noteholders live in almost every State of the Union, we do not expect to have a quorum" and "attendance at the meeting is *not mandatory* and you will not lose any of your rights should you be unable to attend." (Emphasis in original)

The above quoted Article IV, Section 4, refers to notice "in accordance with . . . subdivision (3) of Section 3 of Article VII." There is no subdivision (3) of Section 3 of Article VII but subdivision (e) of Section 3 of Article VII, the only provision in that section relating to required contents of the notice letter, provides:

"The Corporate Trustee (1) within ninety (90) days after the occurrence of a default, known to the Corporate Trustee within such period . . . shall give to the note holders in the manner and to the extent provided in subdivision B of this paragraph (e), notice of the happening of

all defaults known to it unless such default shall have been cured before the giving of such notice . . . ."

The Bank's letter of November 22, 1972, notifying the note holders of the proposed meeting complied with the requirements of both sections. The notice letter correctly informed the note holders that attendance was not mandatory and that they would not lose any of their rights should they not choose to attend, for the Indenture Agreement specifically so provided.

■ Defendant's additional arguments that the Bank was required to inform the note holders that suit was pending and to hold the meeting prior to the institution of suit are also without merit. No provision of the Indenture Agreement requires that note holders be informed that suit has been instituted and no provision requires that the meeting be held prior to such action.

■■ The Order argues that it was entitled to have a representative present at the meeting to attempt to persuade the note holders to extend the due date of the notes. Whatever may be the power, under the Agreement, of less than all of the note holders to extend the date of payment *after* a default has been declared, it is clear that the Order was not given the right in the Indenture Agreement to be present at such meeting for the purpose of attempting to have the date extended. Had such a right been intended by the parties, it would have been clearly stated, and this Agreement is completely silent on the subject. The same holds true of the Order's contention that it is entitled to a list of note holders. This right is sought presumably to afford the Order the opportunity to communicate with the note holders for an extension of time, or a forgiveness of default, or both. The Agreement gives the Order no such right and its claim to such a right does not, in the face of the language of the Agreement, create an issue of fact for trial.

The Bank's motion for summary judgment will be granted for principal, interest and costs of suit.

